UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ANDERSON TERRA MEDINA,
Petitioner,

v.

SERGIO ALBARRAN, et al.,
Respondents.

Case No. 26-cv-13469-EKL

**ORDER GRANTING TEMPORARY RESTRAINING ORDER AND TERMINATING MOTION TO STAY**

Re: Dkt. Nos. 2, 5

On November 9, 2026, Petitioner filed a petition for writ of habeas corpus and an *ex parte* motion for temporary restraining order ("TRO Motion"), against Respondents Acting Field Office Director Sergio Albarran, Acting Director of Immigration and Customs Enforcement David Venurella, Secretary of the Department of Homeland Security Markwayne Mullin, and United States Attorney General Todd W. Blanche. ECF Nos. 1, 2. Petitioner asks this Court to (1) order his immediate release from Respondents' custody pending these proceedings, (2) enjoin Respondents from re-detaining Petitioner unless Respondents first provide at least seven days' notice and a pre-deprivation hearing before a neutral decisionmaker; and (3) enjoin Respondents from transferring him out of this District or deporting him during the pendency of the underlying proceedings. *See* Notice of Mot., ECF No. 2. The Court carefully reviewed the relevant submissions and legal authorities. For the foregoing reasons, the TRO Motion is GRANTED as modified below.

## I. BACKGROUND

Petitioner Anderson Terra Medina is a 52-year-old man living in Turlock, California, with his 26-year-old son (who is a lawful permanent resident) and daughter-in-law (who is a U.S. citizen). Medina Decl. ¶ 1, ECF No. 2-3. Petitioner works as a driver and has paid taxes every

year that he has worked.[1] *Id.*; Medina Jr. Decl. ¶ 6, ECF No. 2-4. "He is a member of the congregation at Our Lady of Assumption Catholic Church in Turlock; through the church he regularly drives elderly people to medical appointments and other errands and delivers food to homebound people, and he volunteers as a commentator for the local Portuguese radio station." Mot. at 9 (citing Medina Decl. ¶ 1; Medina Jr. Decl. ¶ 5). Petitioner suffers from various health conditions, including diabetes, high blood pressure, high cholesterol, a heart condition, prior kidney failure, and neurological effects from a prior stroke. Medina Decl. ¶ 1.

Petitioner is a citizen of Brazil. *Id.* He first arrived in the United States on or around August 1, 2017, on a B-2 visa. *Id.*; Levine Decl. Ex. E at 6, ECF No. 2-7.[2] The Form I-213 indicates that other than his entry into the country, there have been no further immigration records. Form I-213 at 2. He also has no criminal record in the United States or in any other country. *Id.* at 4; Medina Decl. ¶ 1.

On November 9, 2026, Petitioner was with his son at San Francisco International Airport to board a domestic flight. Medina Decl. ¶ 3. At approximately 9:40 a.m., he was approached by two plainclothes officers who identified themselves as "police." *Id.* ¶ 4. The officers told him that he had overstayed his visa and arrested him. *Id.* They did not provide any paperwork to Petitioner prior to his arrest. *Id.* The officers took Petitioner to the ICE office in San Francisco, where they prepared a Form I-200, a Warrant for Arrest of Alien, and served Petitioner said warrant. *Id.*; Ex. E at 3. He was also served a notice of rights, as well as a notice to appear before an immigration judge in California City, California, on November 25, 2026. Ex. E. at 4-8. Petitioner filed a petition for writ of habeas corpus and motion for temporary restraining order the same day. ECF Nos. 1, 2. At 8:07 p.m., the general duty judge ordered Respondents to release Petitioner that same day and to file a status report by the next day regarding their compliance. ECF No. 3. At 9:05 p.m., Respondents filed a motion to stay the general duty judge's order. Mot. to Stay, ECF No. 5.

---

[1] The Form I-213, Record of Deportable/Inadmissible Alien, indicates that Petitioner is "[u]nemployed or [r]etired." Levine Decl. Ex. G at 2, ECF No. 2-9 ("Form I-213").

[2] Exhibit page numbers are in reference to ECF pagination.

On November 10, 2026, at 11:40 a.m., Respondents filed a status report stating that by the time Respondents received notice of the order, Petitioner had already been transported outside of the Northern District of California. Status Report at 1, ECF No. 7. Respondents represented that as of the time of the status report, Respondents were in the process of transporting Petitioner back to this judicial district for release. *Id.* at 2.

## II. LEGAL STANDARD

The standard for issuing a TRO is "substantially identical" to the standard for issuing a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Thus, in order to obtain a TRO, Petitioner must establish that: (1) "he is likely to succeed on the merits," (2) "he is likely to suffer irreparable harm in the absence of preliminary relief," (3) the "balance of equities tips in his favor," and (4) the "injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (citation modified). "Where, as here, the party opposing the injunctive relief is a government entity, the third and fourth factors – the balance of equities and the public interest – merge." *Hubbard v. City of San Diego*, 139 F.4th 843, 854 (9th Cir. 2025) (citation modified).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

## III. DISCUSSION

Petitioner argues that a TRO is warranted because he has a substantial liberty interest arising from his long-term, detention-free residence in the United States, and that detention may not be imposed absent a pre-deprivation bond hearing. As discussed below, the Court finds that Petitioner has raised serious questions going to the merits of his procedural due process claim, that he is likely to suffer irreparable harm absent a TRO, and that the balance of hardships and the public interest tip sharply in his favor.

### A. Likelihood of Success on the Merits

Petitioner has demonstrated at least serious questions going to the merits of his procedural due process claim. The Fifth Amendment guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). "It is well established that the Fifth Amendment entitles aliens to due process of law in [removal] proceedings." *Reno v. Flores*, 507 U.S. 292, 306 (1993).

In evaluating procedural due process claims, courts first assess whether the petitioner was "deprived of a constitutionally protected liberty or property interest," and then assess "whether that deprivation was accompanied by sufficient procedural protections." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Under this second step, in order to determine whether the procedures are constitutionally sufficient, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

#### 1. Constitutionally Protected Liberty Interest

At this first step, the Court finds that Petitioner has demonstrated a protected liberty interest in remaining free from detention. "While the liberty interests of U.S. citizens compared to noncitizens are not coextensive, the Fifth Amendment nonetheless entitles noncitizens to due process of law in deportation proceedings." *Abdeltawab v. Armant*, No. 26-cv-01520-MWF (DTB), 2026 WL 1045564, at *2 (C.D. Cal. Apr. 13, 2026) (citation modified) (quoting *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205-06 (9th Cir. 2022)).

Here, Petitioner has developed a significant liberty interest that has arisen "with the passage of time." *Chaparro Ayala v. Albarran*, No. 26-CV-09430-CRB, 2026 WL 2722780, at *3 (N.D. Cal. Sep. 15, 2026) (citation omitted). When an individual remains in the United States for an extended period of time and the government chooses not to detain that individual, a liberty interest may arise with the passage of time as the individual establishes ties to the community, contributes to society, and develops settled expectations that these bonds will be respected under the law. *Kharitonova v. Albarran*, No. 3:26-CV-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (finding that an individual develops "the same liberty in her continued freedom as an individual initially detained."); *see also Mariusz Murek v. Albarran*, No. 26-CV-10719-PCP, 2026 WL 3062130, at *3 (N.D. Cal. Oct. 13, 2026) (petitioner who "has spent nearly a decade building connections to this country" is "entitled to due process"); *Chaparro Ayala*, 2026 WL 2722780, at *3 ("This is particularly true where an individual forms the attachments of normal life while residing in the country for many years."). Additionally, the government's choice not to detain an individual "reflects a determination by the government that he [is] neither a flight risk nor a danger to the community." *Carriollo v. Albarran*, No. 3:26-CV-05836-JSC, 2026 WL 1734895, at *2 (N.D. Cal. June 16, 2026). Unless that status changes, the individual's liberty interest is "strong." *Id.*; *see also Tello Vazquez v. Mullin*, No. 26-CV-2039-KKE, 2026 WL 1911507, at *2 (W.D. Wash. July 2, 2026).

Petitioner has lived in the United States since August 2017. Medina Decl. ¶ 1. He has worked, paid taxes, and become integrated in his community through his family ties and community service. *Id.* The record before the Court also does not show any evidence that Petitioner is a flight risk or danger. Because of his ties to the community and the government's previous "implicit acquiescence to his continued release," Petitioner has a "strong interest in remaining at liberty." *Jambwa v. Warden of Desert View Annex Det. Facility*, No. 5:26-CV-04357-PD, 2026 WL 2449550, at *2 (C.D. Cal. Aug. 20, 2026). Accordingly, the Court concludes that Petitioner has demonstrated a protected liberty interest.

**2. *Mathews* Analysis**

At the second step, the Court applies the three-part test set forth in *Mathews v. Eldridge* by evaluating: (1) the private interest; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) the government's interest. 424 U.S. at 335.

Here, each factor weighs in Petitioner's favor. As to the first factor, Petitioner has established a significant liberty interest in remaining free from detention. As to the second factor, the risk of an erroneous deprivation of Petitioner's liberty interest is high without a pre-detention hearing. *Abdeltawab*, 2026 WL 1045564, at *6. As to the third factor, the government's interest in re-detaining Petitioner without a pre-deprivation hearing in these circumstances is low. *See, e.g.*, *Barbosa da Cunha v. Freden*, 175 F.4th 61, 95 (2d Cir. 2026) (finding no government interest that would "bear a 'reasonable relation' to any legitimate, non-punitive purpose" (quoting *Zadvydas*, 533 U.S. at 690)); *Cordero Pelico v. Kaiser*, No. 25-cv-07286-EMC, 2025 WL 2822876, at *15 (N.D. Cal. Oct. 3, 2025) (noting that whether Respondents "conduct[] a pre-detention hearing – or, indeed, whether Petitioners are in detention or not – will not obstruct the removal process"). "In immigration court, custody hearings are routine and impose a minimal cost." *Singh v. Andrews*, 803 F. Supp. 3d 1035, 1048 (E.D. Cal. 2025) (citation modified); *see also Duong*, 2026 WL 2124362, at *6 ("[B]ond hearings require little expenditure of resources."). Thus, the *Mathews* factors weigh in Petitioner's favor.

**3. Remedy**

Because the *Mathews* factors weigh in his favor, Petitioner has raised a serious legal question as to his procedural due process claim, and he is entitled to a bond hearing before an immigration judge prior to his re-detention. Generally, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). In some cases, exceptional circumstances may necessitate a post-deprivation hearing. *See Guillermo M. R. v. Kaiser*, 791 F. Supp. 3d 1021, 1035-36 (N.D. Cal. 2025) ("Certainly, there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate."). But based on the record before the Court, there is no reason

to believe that exceptional circumstances require Petitioner's immediate detention. Petitioner does not have any criminal history in the United States or elsewhere; nor is there any indication that he is a flight risk given his ties to the community in Turlock. Form I-213 at 4; Medina Decl. ¶ 1. Accordingly, a pre-deprivation hearing is required to satisfy due process, and Respondents can present the arguments raised above in that forum.

**B. Remaining *Winter* Elements**

Petitioner has also satisfied the other *Winter* elements. Without a TRO, Petitioner faces irreparable harm from the unconstitutional deprivation of his liberty. *See Warsoldier v. Woodford*, 418 F.3d 989, 1001-02 (9th Cir. 2005) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." (citing 11A *Wright & Miller's Federal Practice & Procedure* § 2948.1 (2d ed. 2004))). In addition, the balance of the equities and the public interest, which are merged in this case because the government is the opposing party, tip sharply in Petitioner's favor. The government is not "harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983). "Faced with a choice between minimally costly procedures and preventable human suffering, . . . the Court concludes that the balance of hardships tips decidedly in petitioner's favor." *Singh*, 803 F. Supp. 3d at 1049 (citation modified) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017)). Moreover, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation omitted); *see also Jorge M. F. v. Wilkinson*, No. 21-cv-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) ("The public has a strong interest in upholding procedural protections against unlawful detention[.]" (citation modified)).

Finally, the Court will not require security under Federal Rule of Civil Procedure 65(c) as there is "no realistic likelihood of harm to the [Respondents] from enjoining [their] conduct." *Jorgensen v. Cassiday*, 320 F.3d 906, 919-20 (9th Cir. 2003); *see also Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999) (Federal Rule of Civil Procedure 65(c) confers upon the district court the "discretion as to the amount of security required, if any.").

## IV. ORDER

For the foregoing reasons, it is hereby **ORDERED** that Petitioner's motion for temporary restraining order is **GRANTED** to preserve the status quo pending further briefing and a hearing on this matter. Respondents are **ORDERED** to immediately release Petitioner from Respondents' custody and are **ENJOINED AND RESTRAINED** from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker, and from removing Petitioner from the United States.[3] This Order shall remain in effect until November 24, 2026, at 2:00 p.m.

Respondents shall provide a status report confirming Petitioners' release by end of day November 10, 2026. Respondents are **ORDERED TO SHOW CAUSE** in writing by November 16, 2026, at 5:00 p.m., why a preliminary injunction should not issue. Petitioner may file a response by November 19, 2026, at 5:00 p.m. A hearing on the Order to Show Cause is set for November 24, 2026, at 11:30 a.m. in Courtroom 7. The parties may extend this briefing schedule or continue the hearing by filing a stipulation with proposed order pursuant to Local Rule 7-11 on the condition that the relief granted by this Order is comparably extended.

It is further **ORDERED** that the terms of this Order supersede the terms of order issued by the general duty judge. *See* ECF No. 3. Accordingly, Respondents' motion to stay the general duty judge's order is **TERMINATED** as moot. *See* Mot. to Stay at 2 (requesting a stay of that order pending a "ruling on the motion for temporary restraining order").

**IT IS SO ORDERED.**

Dated: November 10, 2026 at 2:00 p.m.

EUMI K. LEE
United States District Judge

[3] Petitioner also asks the Court to order that he remain within the Northern District of California in order to preserve this Court's jurisdiction, but it is well-established that "when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004).